# UNITED STATES DISTRICT COURT

for the
Northern District of Texas

**FILED**
August 26, 2025
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| Bratton Dean Wilkinson | ) | 3:25-MJ-856-BN |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 25, 2025__ in the county of __Dallas__ in the __Northern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1038(a)(1) | False Information and Hoaxes |

This criminal complaint is based on these facts:

See attached Affidavit of SA Chad Rogers, FBI

☑ Continued on the attached sheet.

*Complainant's signature*

SA Chad Rogers, FBI
*Printed name and title*

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1.

Date: August 26, 2025

*Judge's signature*

City and state: Dallas, Texas

DAVID L. HORAN, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Chad James Rogers, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging Bratton Dean Wilkinson ("Wilkinson") with False Information and Hoaxes, in violation of 18 U.S.C. § 1038(a)(1).

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 2024. I am currently assigned to the Counterterrorism Unit at the North Texas Joint Terrorism Task Force ("NTJTTF") in Dallas, Texas. In this capacity, I am responsible for investigating domestic terrorism cases, including, but not limited to, weapons of mass destruction violations, racially motivated acts of violence, sexually motivated acts of violence, and militia/anti-government extremists.

3. I have successfully completed the 16-week Basic Field Training Course at the FBI Academy in Quantico, Virginia. During that time, I received training on various topics including evidence collection, interviewing, legal procedure and process, source management, investigative technology, firearms and tactical training, and defensive tactics. As a part of my duties, I continue to receive training on investigative tactics, including digital forensic analysis, cellular telephone network technologies, and executing search and seizure warrants.

4. I have been involved in the investigation of numerous types of offenses against the United States, including domestic terrorism, international terrorism, violent

and narcotic related crimes, false information and hoaxes, and interstate communications and threats. These investigations have often involved the use of physical surveillance, cooperating witnesses, financial and telephone toll record analysis, review of cellular and computer forensic analysis, the execution of search and arrest warrants, and the debriefing of witnesses and subjects.

5. The facts in this affidavit come from information obtained by me from other law enforcement officers and witnesses. The purpose of this affidavit is to set forth only those facts necessary to establish probable cause that Wilkinson has violated 18 U.S.C. § 1038(a)(1); as a result, I have not described all of the relevant facts and circumstances of which I am aware.

## PROBABLE CAUSE

6. On or about August 25, 2025, at approximately 8:00 p.m., the FBI Dallas Field Office learned of an incident that occurred at the Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") facility located in Dallas, Texas.

7. More specifically, on or about August 25, 2025, at approximately 6:30 p.m., a white male, later determined to be Wilkinson, approached the Visitor's Entrance of the ICE ERO facility in Dallas, Texas and attempted to open the doors, but the doors were locked. Thereafter, Wilkinson tapped on the glass doors. The protective security officer ("PSO") on duty that evening opened the door and asked Wilkinson how he could help Wilkinson. Wilkinson did not verbally respond. Wilkinson motioned with his head at his backpack and at an object Wilkinson was wearing on the inside of his left wrist.

The object on Wilkinson's left wrist was a black square with a black button and a red button. Wilkinson held a cell phone in his left hand and the PSO could observe that Wilkinson appeared to be in an active phone call with another individual. The PSO asked Wilkinson why Wilkinson was at the ICE ERO facility. The PSO then took the cell phone out of Wilkinson's hand thinking that the person on the phone would be able to tell the PSO why Wilkinson was at the ICE ERO facility. Wilkinson then stated, "Bomb," and motioned to the backpack and the object on his wrist. The PSO asked Wilkinson, "You're telling me you have a bomb in your backpack?" Wilkinson nodded and again stated, "Bomb." The PSO acknowledged Wilkinson, told Wilkinson to stay where he was, and closed the door.

8. The PSO immediately went to a processing area of the ICE ERO facility to notify ICE personnel of the situation. While he was walking, the PSO spoke on Wilkinson's phone to the party on the other end of the call. A woman identified herself as Wilkinson's girlfriend. The PSO informed Wilkinson's girlfriend that Wilkinson just informed him that Wilkinson had a bomb in his backpack. Wilkinson's girlfriend informed the PSO that Wilkinson did not have a bomb and that he was just upset. Thereafter, the PSO passed Wilkinson's phone to another person so that the PSO could call 911.

9. At approximately 6:35 p.m., the PSO called 911. While waiting for the Dallas Police Department ("DPD") to respond, the PSO and several ICE personnel kept their distance from the door and observed Wilkinson in a seated position on the ground in front of the door.

10. According to the DPD call log for the incident, responding officers arrived to the ICE ERO facility at approximately 6:43 p.m. Thereafter, Wilkinson informed the responding officers that he was approached earlier in the evening by a homeless person who entered his vehicle near the intersection of Lemmon Avenue and Inwood Road. Wilkinson further stated that the unidentified homeless person brandished a handgun and ordered Wilkinson to put the backpack on and drive to the ICE facility. While driving, the homeless person told Wilkinson that there was a bomb in the backpack. Wilkinson stated that the device on his wrist was a detonator.

11. DPD did not a find a bomb or any bomb making material within the contents of Wilkinson's backpack or his vehicle that was parked in the parking lot.

12. Wilkinson was arrested for a violation of Texas Penal Code § 22.07(e) – Terroristic Threat. Wilkinson was subsequently transported to the Dallas County Jail for processing.

## CONCLUSION

13.     Based on the facts described above, there is probable cause that Wilkinson engaged in conduct with intent to convey false and misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of Chapter 40 of Title 18 of the United States Code, to wit, using explosives in a federal building in violation of 18 U.S.C. § 844(f)(1), all in violation of 18 U.S.C. § 1038(a)(1).

_____
Chad Rogers
Special Agent
Federal Bureau of Investigation

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1 on this 26th day of August, 2025.

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF TEXAS